# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GORDON K. DAVIDSON, )
)
      Plaintiff, )
)
vs. )    Case No. 10-CV-484-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## OPINION AND ORDER

Plaintiff Gordon Davidson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §416(i) & 423, and Supplemental Security Income under Title XVI, 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 8].

## Standard of Review

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C.§ 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir.

---

[1] Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially, and upon reconsideration. A hearing before ALJ Lantz McClain was held on February 9, 2009. [R. 16]. By decision dated June 25, 2009, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review on June 16, 2010. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On July 27, 2010, plaintiff timely filed his appeal to this Court. [Dkt. # 2].

1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

**Burden of Proof**

A claimant for disability benefits bears the burden of proofing his disability at step-one through step-four of the sequential evaluation.[2] 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). Disability is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

2

**Background**

Plaintiff was born on June 28, 1963, and was 45 years old on the date of the hearing before the ALJ. [R. 20]. Plaintiff has an eighth grade education. [R. 20]. He has past work experience as an electric motor rewinder, sander, pest control worker, trash collector, press operator II, and supervisor of electric assemblers. [R. 40, 105, 111, 119-130]. Plaintiff has a history of injuries to his back and neck, which he alleges have grown into chronic back and neck pain. [R. 239]. Plaintiff was involved in a motor vehicle accident in 1979, when he was a teenager. [R. 188]. He had a second motor vehicle accident in 1982, that allegedly resulted in hospitalization from a whiplash which purportedly worsened the pain in his back and neck. [R. 188]. Plaintiff claims he had a job-related injury approximately four years ago that caused mid-back pain. [R. 188]. Plaintiff has been receiving chiropractic treatments since 2005. [R. 2003-213]. In 2007, plaintiff submitted medical insurance claims for twelve manipulations and eleven physical therapy treatments with Charles Fleming, D.C. In 2008, he submitted claims for twenty-one manipulations and twenty physical therapy treatments from Dr. Fleming. [R. 253]. In 2009, plaintiff reported seven manipulations and eight physical therapy treatments from Darrick Davis, D.C. [R. 251]. He receives the manipulations and physical therapy together during an office visit. [R. 256]. Examination notes prepared by Christopher Boxell, M.D. show plaintiff's chiropractic treatments "seemed to be helpful." [R. 239]. Plaintiff advised Byran Ledbetter, D.O. that his pain is relieved by chiropractic therapy. [R. 188].

In addition to back pain, plaintiff claims a history of chronic headaches associated with neck pain. [R. 239]. Dr. Boxell noted in plaintiff's past history, that his migraine headache "seems to respond well to Relpax." [R. 239]. Plaintiff claims he occasionally experiences pain that radiates to his left arm and hand and occasionally he has similar symptoms in his left leg. [R. 188, 239].

3

Plaintiff alleges he cannot work because of back pain and stiffness, limited mobility and difficulty sleeping. [R. 104]. On June 6, 2007, plaintiff filed his application for disability insurance benefits and supplemental security income, alleging a disability onset date of February 1, 2007. [R. 88]. The relevant adjudicated period in this case is from February 1, 2007 through June 25, 2009.

In his written decision, the ALJ found that plaintiff had not worked since his alleged onset date; his severe impairment is degenerative disc disease; his headaches are mild and treatable and would have only a minimal affect on his ability to work; he does not have an impairment or combination of impairments that meet or equal the listing of impairments; he has the residual functional capacity ("RFC") to perform light exertional work, limited by only occasional stooping; and, after consulting a vocational expert, the ALJ concluded that plaintiff could perform his past work as an electric motor rewinder, press operator II, and supervisor. [R. 11-15]. Accordingly, the ALJ denied plaintiff's applications for benefits at step-four of the five-step sequential evaluation process for determining disability.

## **Issues on Appeal**

Plaintiff raises three arguments on appeal:

(1)   The ALJ erred in failing to properly analyze the opinion of plaintiff's treating physician, James Beymer, D.O.

(2)   The ALJ erred in failing to perform a proper step-four determination.

(3)   The ALJ erred in failing to perform a proper credibility determination.

[Dkt. # 15 at 2].

**Discussion**

As his first assignment of error, plaintiff contends the ALJ failed to properly analyze the opinion of plaintiff's treating physician James Beymer, D.O. The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[3] Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3D at 1300 (citing 20 C.F.R.§ 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete, and he need not give the opinion controlling weight. If the ALJ determines the opinion is not entitled to controlling weight, the ALJ must next consider whether the opinion should be

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

rejected altogether, or assigned some lesser weight. He does this by applying the factors enumerated in 20 C.F.R. §§ 404.1527, 416.927. Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Sandoval v. Barnhart, 197 Fed. Appx. 801 (10th Cir. 2006) (unpublished) citing Watkins, 350 F.3d at 1300. If the ALJ rejects the opinion altogether, he must give "specific, legitimate reasons" for doing so. Id. (citing 20 C.F.R. §§ 404.1527, 416.927). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

In his written decision, the ALJ attributed the following statement as Dr. Beymer's medical opinion:

> On February 4, 2009, Dr. Beymer signed an application for a handicap parking placard because the claimant was "severely limited in his ability to walk" (Exhibit 10F). By report dated February 4, 2009, Dr. Beymer stated that the claimant had "severe" arthritis of the cervical, thoracic, and lumbar spines that severely limited his ability to walk stand, squat, bend, sit and lift (Exhibit 11F).

[R. 14]. The ALJ first considered whether Dr. Beymer's opinion was well-supported by medically acceptable evidence. He determined that it was not. The ALJ gave adequate reasons for this conclusion. He determined that Dr. Beymer's opinion was contrary to the radiographic reports on plaintiff's thoracic and lumbar spine and that Dr. Beymer had not received the radiographic report on plaintiff's cervical spine at the time he issued his opinion. The ALJ set forth the radiographic

reports to support his determination.

> There is no objective evidence to support Dr. Beymer's statement that the claimant has 'severe' arthritis in the cervical, thoracic, and lumbar spines. In fact, objective medical evidence refutes that statement. MRI of the lumbar spine on December 18, 2006, revealed only "minimal" disc bulging at L3-4 and L4-5 with no evidence of disc herniation, central canal stenosis, or nerve root displacement (Exhibit 7F). MRI of the thoracic spine on March 17, 2007, was unremarkable (Exhibit 5F, page 7). At the time of Dr. Beymer's report, there was no radiographic evidence of any impairment to the claimant's cervical spine. However, MRI of the cervical spine on March 6, 2009, revealed degenerative disc disease with only 'mild' bulging and narrowing (Exhibit 12F).

[R. 14]. The ALJ determined that Dr. Beymer's opinion was not entitled to controlling weight because it conflicts with his own treatment records and was inconsistent with other substantial evidence of record. The ALJ then turned to the second step of the analysis. In considering the relevant factors in 404.1527 and 416.927, the ALJ determined:

(1) The length of the treating relationship –

At the time Dr. Beymer prepared his opinion dated February 4, 2009, he had only seen plaintiff on two office visits, November 24, 2008 and December 3, 2008. [R. 14, 228, 229]

(2) Treatment provided --

On February 4, 2009, at the time Dr. Beymer prepared his opinion, there was no radiographic evidence of any impairment to plaintiff's cervical spine, because Dr. Beymer had not received the MRI report.

(3) Degree the opinion is supported by relevant evidence --

There is no objective medical evidence to support Dr. Beymer's statement that plaintiff has "severe" arthritis in the cervical, thoracic, and lumbar spines. In fact, objective medical evidence refutes that statement. The MRI report on plaintiff's cervical spine is dated March 5, 2009, and revealed that plaintiff had "degenerative disc disease" with only "mild" bulging and narrowing. [R. 14, 232].

(4) Consistency between opinion and record –

7

> Two medical experts with the State Agency had opinions inconsistent with Dr. Brymer's. Physical examination on August 17, 2007, demonstrated only mildly reduced range of motion and mild weakness with heel-and-toe walking. [R. 13,14].

(5)    Whether the physician is a specialist --

> Dr. Beymer is a family practitioner.

(6)    Other factors –

> Dr. Beymer's opinion on issues reserved for the ALJ, are not entitled to controlling weight or special significance.

As to factor (4) above, the ALJ was referencing a consultative examination performed by Dr. Ledbetter, D.O. on August 17, 2007. Dr. Ledbetter opined that plaintiff could ambulate safely without assistance, had a stable gait, mildly reduced range of motion in the cervical spine and left hip, mild cervical and low thoracic/lumbar dysfuntion and mild problem with left hip adduction. [R. 188-193]. The ALJ rejected Dr. Beymer's opinion outright and he gave specific and legitimate reasons for doing so. The ALJ supported his determination by substantial evidence, and he applied the correct legal standard in analyzing Dr. Beymer's opinion.

Plaintiff faults the ALJ's analysis arguing that the ALJ misquoted Dr. Beymer's opinion. The complete text of Dr. Beymer's opinion reads:

> Gordon Davidson is a patient of mine at SouthBrook Family Physicians who is diagnosed with degenerative arthritis of cervical, thoracic and lumbar spine. His condition severely limits his ability to walk any distance over 150 feet. It also limits his ability to stand, squat, bend sit or lift as well. I am attempting to treat Mr. Davidson with physical therapy and medication to make him as functional as possible, but I expect him to probably have only minimal success with these treatments.

[R. 230]. "Severe" is the only word in Dr. Beymer's opinion that the ALJ placed in quotation marks. The ALJ rejected Dr. Beymer's opinion, in part, because in his examination notes, Dr. Beymer

8

diagnosed plaintiff with degenerative disc disease, not degenerative "arthritis." There is no evidence of record that plaintiff has "severe" arthritis of the cervical, thoracic and lumbar spine. The ALJ referenced Dr. Beymer's opinion as "severe" arthritis rather than degenerative arthritis which severely limits his capacity to function. This is merely an argument of semantics. The ALJ found at step-two that plaintiff's severe impairment is degenerative disc disease. The ALJ's finding at step-one is consistent with Dr. Beymer's clinical notes. That determination is not at issue in this appeal. The issue is whether the ALJ properly analyzed Dr. Beymer's opinion as to whether plaintiff's disc disease severely limited his functional capacity to perform work. Dr. Beymer opined that it did. The ALJ rejected Dr. Beymer's opinion and he gave specific and legitimate reasons for doing so. The ALJ properly analyzed Dr. Beymer's opinion. Any miss-wording of Dr. Beymer's opinion is harmless error.[4]

Plaintiff argues that by Dr. Beymer issuing plaintiff a handicapped parking placard, with a check mark denoting plaintiff is "severely limited in his or her ability to walk due to an arthritic, neurological or orthopedic condition" shows that Dr. Beymer's two opinions are compatible. The weakness of this argument is that compatible opinions from the same source do not amount to substantiating evidence; rather, it is merely cumulative. Dr. Beymer's opinion was rejected by the ALJ as being contrary to the radiographic reports and inconsistent with other evidence of record.

Plaintiff argues that Dr. Beymer's opinion was not properly analyzed, because plaintiff's

---

[4] The Tenth Circuit applies the harmless error analysis in social security disability cases. See Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005) (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)) (harmless error is applied when certain technical errors were "minor enough not to undermine confidence in the determination of the case.") A finding of fact is harmless if the missing fact was clearly established in the record, which is the only possible basis for invoking the harmless error principle. 357 F.3d at 1145.

prescriptions for narcotic pain medication and plaintiff's chiropractic treatments substantiate Dr. Beymer's opinion that plaintiff has severe limitations in his functional capacity. This is a post hoc argument. Dr. Beymer did not rely on these factors in formulating his opinion. To the contrary, Dr. Beymer offered no medical evidence to support his opinion, and the opinion he offered regarding plaintiff's cervical spine was based on mere speculation. Dr. Beymer opined that plaintiff's condition limits his ability to stand, squat, bend, sit or lift, without providing any medical evidence to support this conclusion. At best, Dr. Beymer's opinion is merely conclusory. The Tenth Circuit has held that a treating physician's opinion must be given substantial weight "unless good cause is shown to the contrary." Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 513). "[A] treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." Id. In this case, the Court finds that Dr. Beymer's opinion was brief, conclusory and unsupported by medical evidence and, as such, was properly rejected by the ALJ. Further, the ALJ properly found that Dr. Beymer's opinion was inconsistent with other evidence of record. For example, the record reflects that plaintiff advised Dr. Boxell and Dr. Ledbetter that his chiropractic treatments seemed to help and that his pain was relieved by chiropractic therapy. Plaintiff improperly attempts to provide a lay analysis of the medical records to support Dr. Beymer's diagnosis of degenerative arthritis. Further, plaintiff misstates that plaintiff had 5 office visits with Dr. Beymer prior to February 4, 2009, the date of Dr. Beymer's opinion letter. The ALJ properly determined that there had been only two office visits.

| | | |
|---|---|---|
| November 24, 2008 | Examination Note | [R. 246, 229] |
| December 3, 2008 | Examination Note | [R. 246, 228] |
| **February 4, 2009** | **Opinion Letter** | **[R. 245, 231]** |

10

| | | |
|---|---|---|
| February 11, 2009 | Insurance Claim | [R. 245] |
| April 14, 2009 | Insurance Claim | [R. 245] |
| June 9, 2009 | Insurance Claim | [R. 245] |

The record does not include examination records to support plaintiff's insurance claims dated February 11, 2009, April 14, 2009 or June 9, 2009, all of which post-date Dr. Beymer's opinion. The Court finds no merit in plaintiff's first issue of error.

As his second issue of error, plaintiff asserts that the ALJ failed to perform a proper step-four determination. Plaintiff contends the ALJ's hypothetical to the vocational expert was imprecise because he failed to reference plaintiff's headaches and plaintiff's inability to concentrate in any fashion, resulting in an improper RFC determination.

Initially plaintiff challenges the factual accuracy of the ALJ's findings that there is no evidence that plaintiff was treated for headaches or even mentioned headaches to his treating physicians. The ALJ stated:

> The claimant has alleged headaches 2-3 times a week and migraines at least once a month. There is no evidence that the claimant has ever been treated for headaches or even mentioned headaches to his treating physicians. The only mention of 'headaches' is on March 5, 2009 (Exhibit 12F). On his medication list, the claimant stated he took over-the-counter ibuprofen for 'migraines' (Exhibit 13E).

[R. 12]. The ALJ's factual findings regarding plaintiff's complaint of headaches is inaccurate. The ALJ correctly acknowledged that "headache" is listed as a reason for conducting the cervical spine MRI on March 5, 2009, and that plaintiff acknowledged treating migraines with ibuprofen on February 9, 2009. [R. 232-233, 163]. The administrative record, in fact, shows that plaintiff has a "past history" of headaches, several years prior to the relevant adjudicated period in this case, and

11

his headaches were one of several symptoms associated with having the flu.[5] Plaintiff was treated by his family physician, James Coder III, D.O. on December 27, 2002 [R. 175]; August 3, 2004 [R. 173]; and January 25, 2006 for influenza. [R. 169]. Additionally, in completing a Chiropractic Health Questionaire in May 2, 2005, plaintiff checked "headache" as one of his several "general symptoms" [R. 204].

The only evidence of plaintiff complaining of "headaches and migraines" to a treating source, within the relevant adjudicated period and in relation to complaint of cervical neck pain, is on January 1, 2009. [R. 223-226]. On that date, Darrick Davis, D.C. in filling out a form for a Treatment Plan, diagnosed plaintiff with cervical radiculitis, cervicogenic headaches, migraines, lumbar disc bulge and sciatica. [R. 224]. This diagnosis also pre-dates plaintiff's cervical MRI report of March 6, 2009. It also predates x-rays performed by Dr. Davis on January 12, 2009. [R. 244]. The ALJ properly did not consider Dr. Davis' diagnosis that plaintiff has cervicogenic headaches and migraines, because Dr. Davis is not classified as an "acceptable medical source" under the regulations. Dr. Davis is classified as an "other source," and his diagnosis can not be used to establish the existence of an impairment.[6] "Other sources" include nurse practitioners, physician

---

[5] Plaintiff also reported have left ear popping, sinus problems, coughing, drainage, low grade fever, and a red throat.

[6] Under the regulations, in assessing the limitations caused by an alleged disability, the ALJ must consider all of the available evidence in the individual's case record. This includes "acceptable medical sources" and "other sources." "Acceptable medical sources" includes licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists. See 20 CFR 404.1502 and 416.902. The ALJ may rely only on "acceptable medical sources" for the following purposes: (1) to establish the existence of a medically determinable impairment, 20 CFR 404.1513(a) and 416.913(a); (2) for a medical opinion, 20 CFR 404.1527(a)(2) and 416.927(a)(2); and (3) as treating sources whose medical opinions may be entitled to controlling weight. 20 CFR 404.1527(d) and 416.927(d).

assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. See 20 CFR §§ 404.1513(d), 416.913(d). The ALJ may use evidence from "other sources" only to show the severity of the individual's impairments and how those impairments affect the individual's ability to function. In other words, information from "other sources" cannot be used to determine an impairment, provide an opinion, or be the controlling source. SSR 06-03p. Other than completing a standardized Treatment Plan, Dr. Davis provides no clinical or other objective medical evidence to support his diagnosis.

On July 8, 2009, following the close of the relevant adjudicated period on June 25, 2009, plaintiff was referred by Dr. Beymer to Christopher Boxell, M.D., a specialist in Physical Medicine and Rehabilitation, for an evaluation of chronic neck and back pain problems. [R. 239-241]. In reviewing plaintiff's history of his present illness, Dr. Boxell noted that plaintiff "has a history of chronic headaches associated with his neck pain." Dr. Boxell included in plaintiff's "past medical history" migraine headache disorder which seems to respond well to Relpax." [R. 239]. On July 15, 2009, Dr. Boxell transmitted his evaluation to Dr. Beymer. Dr. Boxell opined:

> I do not see any evidence for significant disc space narrowing in the lumbar area. The cervical study only goes down to the C5-C6 junction but appears unremarkable. The thoracic films are also under penetrated, but the patient does appear to have some anterior osteophytes coming off of the mid to upper thoracic region of the spine. These are all located anteriorly. I did not see any gross deformity of the spine.

[R. 244]. Dr. Boxell's evaluation does not indicate that plaintiff's cervical spine would contribute to migraine headaches. The only other evidence referring to migraine, is a list of plaintiff's medication on August 1, 2009, which includes Relpax, 40 mg, as needed for migraines. [R. 264].

In his written opinion, the ALJ entered the following finding, "based on the totality of the evidence, the Administrative Law Judge finds that the claimant's alleged headaches are mild and

treatable, and would have only a minimal affect on his ability to perform substantial gainful activity."

[R. 12]. The ALJ did not have the benefit of Dr. Boxell's medical records at the time he issued his written opinion, and as such, his written opinion does not address Dr. Boxell's impression of plaintiff's condition.[7] Plaintiff's Exhibits 13F through 15F were submitted to the Appeals Council. [R. 4]. These exhibits include the treatment notes of Dr. Davis, the office evaluation conducted by Dr. Boxell and the treatment record of Christopher Moses, D.O. Moreover, the Court notes that the ALJ did not set forth the complete cervical radiographic report, which reads:

**IMPRESSION:**

1. Posterior midline and right paramedian C3-4 disc protrusion abutting the cord with right paracentral borderline/mild canal stenosis. The disc is abutting the right C4 nerve root.

2. Minimal narrowing of the right C4-5 foramen by uncinate spur, abutting the right C5 nerve root.

3. Minimal bulging of the C5-6 disc with endplate spurs and to the left of midline. Left paracentral, borderline, mild canal stenosis.

4. C6-7 disc protrusion to the left of midline with left paracentral/mild canal stenosis.

It is unclear in the ALJ's decision, whether the ALJ mis-read the record regarding plaintiff's history, treatment and complaints of headaches, or whether the ALJ found that plaintiff's complaints of headaches outside the adjudicated period were not relevant and those made within the relevant period were mild and treatable with over-the-counter ibuprofen and Relpax, as needed. Moreover, the ALJ did not have the benefit of Dr. Boxell's evaluation of plaintiff's cervical spine radiographic studies at the time he formulated his hypothetical question to the vocational expert and his RFC

---

[7] At the hearing, the ALJ showed Exhibits 1A through 11F, were filed of record for his review. Counsel acknowledged to the ALJ, that the record was complete. [R. 19].

determination. Thus, this Court finds that the case should be remanded with direction for the ALJ to enter supplemental findings as to these specific medical records. After such review, the ALJ should determine whether he needs to modify and resubmit a hypothetical question to the vocational expert.

As his last issue, plaintiff challenges the ALJ's credibility determination. Plaintiff argues that this is an important determination because the vocational expert testified that if plaintiff's testimony was credible, there were no jobs in the national economy that plaintiff could perform. [R. 42]. In entering his credibility determination, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[R. 13]. In making his credibility determination, the ALJ found that plaintiff's statements as to the intensity of his pain were not supported by the radiographic reports. [R. 13]. The ALJ found that plaintiff had requested physical therapy but there was no record that he had received it. Plaintiff submitted insurance claims to the Appeals Council as "evidence" that he received physical therapy. Copies of insurance claims are only evidence that plaintiff submitted claims to his insurance carrier. They are not evidence of the treatment plaintiff received or of the benefits he received from those treatments. The Court finds that this case should be remanded to the ALJ with instructions to obtain copies of plaintiff's physical therapy treatment records and enter supplemental findings as to whether those treatments relieved plaintiff's symptoms, as indicated in the examination notes maintained by Dr. Boxell. [R. 239].

The ALJ found that plaintiff's pain was managed by medication and chiropractic treatments.

15

[R. 13]. Although there is evidence of record to support this finding, this issue should be further explored on remand, to the extent indicated above. Finally, the ALJ states that plaintiff did not receive medical treatment from October 25, 2007 until November 24, 2008. Evidence that plaintiff received medical treatment during that time frame was submitted to the Appeal Council, after the ALJ issued his written opinion on June 25, 2009. Accordingly, the Court finds that on remand, the ALJ should review the supplemental exhibits and entering additional findings, consistent with the provisions of this Opinion and Order.

## Conclusion

Upon a *de novo* examination of the record, it is hereby ORDERED, ADJUDGED AND DECREED that this case is REVERSED and REMANDED to the Commissioner for further administrative action pursuant to sentence four (4) of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Melkonyan v. Sullivan, 501 U.S. 89 (1991).

Upon remand, the Commissioner will supplement his written decision by entering his findings and conclusion as to plaintiff's claim of disabling headaches and migraine, his determination of step-four of the sequential evaluation and as to the issue of credibility.

SO ORDERED this 2nd day of August, 2011.

T. Lane Wilson
United States Magistrate Judge